IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                              Case No. 18-10157-JWB

DANIEL ERIC MERIDA,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to vacate or correct sentence under 28 U.S.C. § 2255 (Doc. 87) and motion to appoint counsel (Doc. 95). The motion to vacate has been fully briefed. (Docs. 88, 92, 98.) For the reasons set forth herein, Defendant's motion to vacate sentence is DISMISSED IN PART and TAKEN UNDER ADVISEMENT IN PART. Defendant's motion to appoint counsel is GRANTED.

**I.    Facts**

On November 6, 2018, Defendant was indicted with the following charges: production of child pornography, in violation of 18 U.S.C. § 2251(a); two counts of commission of certain felonies while required to register as a sex offender, in violation of 18 U.S.C. § 2260A; distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470. (Doc. 1.) Assistant Federal Public Defender ("AFPD") Mitch Biebighauser was appointed as his counsel. (Doc. 8.)

On April 30, 2019, defense counsel initiated plea discussions. The initial offer proposed that Defendant would plead guilty to count four, the possession charge, with an agreed sentence

1

of 240 months. (Doc. 92, Exh. 1.) The offer was rejected on the same day. Assistant United States Attorney ("AUSA") Jason Hart provided a counter-offer. The government's rejection and counter-offer were stated as follows:

> Thank you for your letter. You have proposed that Mr. Merida plea [sic] guilty to Count 4, with an agreement for a 20 year sentence. I decline Mr. Merida's offer, because a plea to Count 4 (Possession) fails to adequately take into account the seriousness of his conduct, his history, and the strength of the government's case against him.
>
> As a counter-offer, I propose that Mr. Merida plead to the Production offense in Count 1, with a joint agreement for a term of 360 months (I would seek approval of an 11c1C if Mr. Merida agress [sic] to this). He would waive appeal, and agree to restitution to the victim in Count 1 (if she requests it) as well as restitution in the amount of $3,000 per victim to any identified and requesting victim from any dismissed counts. In exchange for his plea, I would dismiss the remaining counts, and agree not to file additional charges based on matters associated with the November 2018 search warrant.
>
> The above plea captures the primary offense conduct (the Production offense), but it would limit Mr. Merida's exposure considerably by removing those pieces that augment his statutory range (the 2260A and other offenses) or subject him to future criminal liability (the newer discovered conduct). I'll hold this offer open until May 7, at which point it will be considered rejected and I will prepare for trial.

(Doc. 88, Exh. A.)

According to Defendant's affidavit, his counsel informed him of the government's 360-month plea offer either the same day or the next day, May 1. (Doc. 88, Exh. B. at 2.) Defendant states that he was not presented with the email but orally advised of the offer as an offer "to drop all counts except for Count One to a binding plea of thirty-years." (*Id.*) Defendant told his counsel that he was concerned about the dates presented in the indictment regarding counts one and five. According to Defendant, he believed that the dates in the indictment were incorrect and that he was incarcerated at the time. He wanted AFPD Biebighauser to file a motion to correct those dates because otherwise it would result in an additional two points under the Sentencing Guidelines and a finding that a victim was under the age of sixteen at the time of the charged conduct. He stated

2

that if he was going to plead guilty he wanted the dates to be right so he doesn't have issues when he undergoes sex offense treatment. (*Id.* at 4.) AFPD Biebighauser asked him if he wanted him to file a motion regarding the dates and Defendant said "yes." (*Id.*) AFPD Biebighauser then told Defendant that he had some issues regarding Defendant's interview and that he wanted to file a motion to suppress. AFPD Biebighauser told Defendant that "it was a long shot, but if the Judge ruled in our favor then things would look a lot better for" Defendant. (*Id.* at 5.) Defendant stated that he was concerned about upsetting the prosecutor by filing a motion and asked if it could result in a withdrawal of the plea offer. AFPD Biebighauser allegedly stated that "I don't believe the DA would do that. I've worked with [AUSA] Hart before, and I don't believe he would just withdraw the plea because we filed a motion." (*Id.*) Defendant then asked if "nothing comes out of this motion hearing besides the dates being changed, then I can accept the 30 years?" (*Id.*) Biebighauser then allegedly stated, "Absolutely, I think 30 years is within his ballpark and I see no reason why he wouldn't be comfortable with still accepting that offer, after the hearing. And who knows, something could go our way at the hearing that gives us leverage to negotiate down to 25 years. Wouldn't hurt to try." (*Id.*) Defendant, however, asserts that AFPD Biebighauser did not tell him about the deadline in the offer and that he would have accepted the offer prior to the deadline if he had known. Defendant's motion also alleges that Biebighauser did not inform Defendant of the potential for additional charges from the November 2018 search warrant. (Doc. 88 at 20-21.)

On July 2 and July 17, 2019, Defendant filed motions to suppress. (Docs. 23, 28.) On July 12, defense counsel sent a second plea offer in which he proposed that Defendant would plead guilty to the distribution and possession counts via a Rule 11(c)(1)(C) plea with a sentencing range

3

of twenty to twenty-five years. (Doc. 92, Exh. 3.) On August 7, the government rejected the offer stating as follows:

> Thank you for your continued discussion of Mr. Merida's case. I decline his offer. On April 30, 2019, I extended an offer to Mr. Merida that contemplated 360 months on Count 1, with additional terms. I advised "I'll hold this offer open until May 7, at which point it will be considered rejected and I will prepare for trial." I wasn't fooling when I said that. May 7 has past. I consider my previous offer rejected, and to the extent there's any confusion about that, let this email clarify that the April 30 offer is off the table. I am preparing for trial. I am not going to engage in the time-consuming dickering that attends plea negotiations. If Mr. Merida wants to convince me that I should reopen my April 30 offer, I think it would be wise for him to do so before his motions are heard. However, I'm not going to actively pursue plea negotiations from my end.

(Doc. 92, Exh. 4.)

On August 14, a superseding indictment was returned. In that superseding indictment, the dates regarding the conduct charged were amended as to some of the original counts and new counts of transportation and possession of child pornography were added. (Doc. 37.) On August 20, 2019, the court held a hearing on the motions to suppress, took the matters under advisement, and set trial to begin on September 3, 2019. (Docs. 40, 41.) On August 21, Federal Public Defender ("FPD") Melody Brannon entered her appearance for Defendant and, on August 23, Defendant filed a motion in limine. (Docs. 42, 44.) On August 27, FPD Brannon sent an email advising AUSA Hart of another counter-offer in which she stated that Defendant would plead guilty to the production charge "via an 11(c)(1)(C) to 25 years." (Doc. 92, Exh. 5 at 4.) On August 28, AUSA Hart rejected that offer and extended a new offer.[1] This new offer was ultimately accepted.

---

[1] After receiving the new offer, FPD Brannon proposed a plea agreement of the same six counts the government proposed but a binding sentence of 30 years. AUSA Hart informed her that he was not inviting a counter-offer and that Defendant could accept his offer or proceed to trial. (Doc. 92, Exh. 5 at 1.)

Based on Defendant's affidavit, he met with AFPD Biebighauser after this offer was extended by Hart.[2] Defendant and his counsel discussed the motion hearing and the superseding indictment. Prior to Biebighauser informing Defendant about the new offer, Defendant told Biebighauser that he wanted to take the "plea deal." (Doc. 88, Exh. B. at 7.) After asking Defendant if he was referring to the 360-month offer, Biebighauser told him that it was not available and that he thought he had made it clear that if a motion was filed, the deal was essentially rejected. Biebighauser then handed Defendant a copy of the April 30, 2019, email offer. (*Id.*) Defendant asserts that he had not seen the email prior to this visit. Defendant allegedly stated that he would have taken the offer had he known that there was an expiration date because the plea deal was only five more years than the statutory minimum. Biebighauser then presented the new offer to Defendant which was an agreement to plead guilty to all counts except the two counts of commission of certain felonies while required to register as a sex offender. In exchange, the government would argue for a forty-year sentence and Defendant was free to argue down to the statutory minimum. After being assured that AUSA Hart was unwilling to negotiate any further, Defendant agreed to accept the new offer. (*Id.* at 8-9.)

That same morning, the court had scheduled a hearing on Defendant's pending motion in limine. At the start of the hearing, the parties advised the court that they had reached an agreement and the plea hearing was set for later that day. In his petition to enter a plea of guilty, Defendant stated that he was satisfied with the advice and help his counsel has given him. (Doc. 54 at 9.) Defendant also informed the court during his plea hearing that he was satisfied with his counsel and understood the terms of the plea agreement. Pursuant to the terms of the plea agreement, Defendant acknowledged his prior conviction in Colorado as an offense relating to the production,

---

[2] Although Defendant does not provide a date of this meeting, it likely occurred on August 28, the date of the email, or August 29, the date of the plea hearing.

possession, receipt, distribution, shipment, or transportation of child pornography. (Doc. 55 at 2, n.1.)

The presentence report was prepared and neither party raised an objection to the report. (Doc. 67.) The statutorily-capped guideline sentencing range was 180 years (2160 months). (Doc. 67 at ¶154.) During the sentencing hearing, Defendant requested a variance to 25 years and the government requested a sentence of 40 years, as allowed under the plea agreement. The court imposed a sentence of 50 years (600 months). (Doc. 76.) Judgment was entered on February 14, 2020. Defendant did not file a direct appeal and timely filed this petition.

Defendant asserts that his counsel was ineffective for failing to properly advise him regarding the April 30 plea offer, by preventing him from disclosing to the court the circumstances regarding the April 30 plea offer, by failing to object to the prior Colorado conviction, and by not arguing at sentencing that the minor victim was sixteen years of age at the time of the charged conduct. (Docs. 88, 98.)

**II.     Standard**

Section 2255(a) of Title 28 of the U.S. Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing. 28 U.S.C. § 2255(b). However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion. Rule 4(b),

Rules Governing Section 2255 Proceedings. *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citation omitted.) "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III. Analysis

#### A. April 30, 2019 Plea Offer

With respect to Defendant's allegations regarding the April 30, 2019, plea offer, Defendant argues that his counsel was ineffective in failing to advise Defendant of the deadline to accept the offer, assuring Defendant that the 30-year offer would be available after the motion hearing, and failing to advise Defendant that the government was contemplating filing a superseding indictment with new charges. (Doc. 88.) To prove his claim of ineffective assistance, Defendant would have to show that his counsel failed to relay this information regarding the plea offer and that failure was unreasonable. To show prejudice from this alleged failure, Defendant must further establish that (1) he would have accepted the earlier offer had he been afforded effective assistance, (2) the

7

government would not have canceled the plea and the court would have accepted it, and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *United States v. Orozco-Sanchez*, 804 F. App'x 952, 959 (10th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

In his motion and affidavit, Defendant states that he would have accepted the plea offer had he known that there was a deadline. In response, the government makes several arguments regarding Defendant's statements in his affidavit, the terms of the offer, Defendant's concerns regarding the dates in the indictment, and whether the court would have accepted the terms of the offer. Although the government raises arguments that may ultimately bear on the resolution of the claims regarding the plea offer, the court finds that there are factual issues that should be resolved in an evidentiary hearing prior to ruling. The court will therefore appoint an attorney for Defendant and conduct a hearing on this issue.

**B. Communications to the Court**

Defendant also argues in his motion that AFPD Biebighauser coerced Defendant not to inform the court regarding the April 30, 2019, plea offer. According to Defendant's motion, Defendant informed Biebighauser that he wanted to bring the plea offer and his frustrations with Biebighauser to the court's attention. Biebighauser allegedly told Defendant that "he had a right to speak to the Judge, and say what he (Merida) needed to say," but further advised Defendant that it might result in the court not accepting the plea or the withdrawal of the plea agreement by the government. (Doc. 88 at 12.) Defendant casts this advice as coercion.

As discussed, Defendant must show that representation "fell below an objective standard of reasonableness and that he was prejudiced as a result." *Lee*, 137 S. Ct. at 1964. Based on Defendant's allegations, his counsel's performance did not fall below an objective standard of

8

reasonableness. Defendant was advised that he could say what he wanted to say but that there was a potential that his statements would result in the court refusing to accept the plea agreement. Based on this allegation, AFPD Biebighauser did not coerce Defendant into remaining silent. Rather, he advised Defendant of the potential consequences of discussing his frustrations with his counsel. Defendant was given an opportunity to speak to the court in the plea hearing. During that hearing, and in the plea documents, Defendant represented that he was satisfied with his counsel. *See United States v. Saucedo-Avalos*, No. 14-20071-02-JAR, 2018 WL 2321952, *6 (D. Kan. May 22, 2018) ("Absent a believable reason justifying departure from their apparent truth, the accuracy and truth of a defendant's statements at a Rule 11 proceeding at which his plea is accepted are conclusively established.") (citing *United States v. Glass*, 66 F. App'x 808, 810 (10th Cir. 2003)).

Moreover, even if these allegations rose to the level of objectively unreasonable performance, Defendant has not shown prejudice as a result. Defendant has not shown that the outcome would have changed as a result of his expressing his frustration with his counsel with the court. Defendant had no desire to go to trial because the charges were "supported by ample evidence." (Doc. 88 at 13.) The government's emails regarding the plea offers and proposals show that AUSA Hart had no intention of offering Defendant a more favorable deal at that stage in the proceedings. Rather, Hart was prepared to immediately proceed to the motion in limine hearing and the trial which was set the following week. (Doc. 92, Exh. 5.)

The allegations in the petition fail to show that counsel's representation fell below an objective standard of reasonableness and fail to show that Defendant suffered any prejudice as a result. The record shows Defendant is not entitled to relief on this ground and that such allegations should be dismissed.

### C. Colorado Conviction

Next, Defendant argues that his counsel was ineffective for not raising a challenge to his previous Colorado conviction that was used to enhance his federal sentence. Defendant claims there were errors in the state conviction which show that his counsel "rendered ineffective assistance" in that proceeding. (Doc. 88 at 22.)

The Supreme Court has held that a prior state sentence cannot be collaterally attacked in a § 2255 motion. *Daniels v. United States*, 532 U.S. 374, 384 (2001). Therefore, Defendant's claim of ineffective assistance of counsel on this ground is dismissed.

### D. Reply Brief

Finally, in his reply brief, Defendant argues that his counsel was ineffective for failing to accept the April 30 plea offer that was supposedly extended again on August 28 or 29 based on the email offered by the government and for failing to argue at sentencing that the minor was sixteen years old at the time of the charged conduct in count 1. (Doc. 98.) This court does not consider issues raised for the first time in a reply brief. *United States v. Craig*, No. CR 12-20141-18-KHV, 2017 WL 6406879, at *3 (D. Kan. Dec. 15, 2017) (citing *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1175 (10th Cir. 2000)).

In any event, these new issues do not provide a basis for relief. As discussed herein, the government's plea offer extended on August 28 was the plea agreement that was ultimately accepted by Defendant. Contrary to Defendant's assertions, the email exchange does not support Defendant's statement that the offer was reopened. (*See* Doc. 92, Exh. 5.) As to the age of the victim, Defendant argues that his counsel's failure to object to the dates set forth in the superseding indictment resulted in the application of an erroneous enhancement under U.S.S.G. § 2A3.1(a)(2)(B). (Doc. 98 at 2-3.) A review of the presentence report, however, shows that this

enhancement was not applied. A similar enhancement, U.S.S.G. § 2G2.1(b)(1)(B), was applied to the calculation of the offense level on count one, the production of child pornography. (Doc. 67 at 13.) This enhancement adds two levels if the victim had not attained sixteen years at the time of the conduct. According to the presentence report, Defendant sought out the minor and "began communicating with her when she as 12 years of age." (*Id.*) Defendant's reply does not address this finding in the presentence report, which is supported by the factual basis in the plea agreement.[3] (*Id.* at 11-12; Doc. 55 at 3-4.) Therefore, Defendant is unable to show that he is entitled to relief on this issue.

IV.     Conclusion

Defendant's motion to vacate or correct sentence under 28 U.S.C. § 2255 (Doc. 87) is DISMISSED IN PART and TAKEN UNDER ADVISEMENT IN PART. Defendant's claims of ineffective assistance of counsel regarding the April 30, 2019, plea offer are TAKEN UNDER ADVISEMENT and an evidentiary hearing will be held by the court. Defendant's remaining claims are DISMISSED. Defendant's motion to appoint counsel (Doc. 95) is GRANTED.

IT IS SO ORDERED. Dated this 2nd day of July, 2021.

                                                             s/ John W. Broomes
                                                             JOHN W. BROOMES
                                                             UNITED STATES DISTRICT JUDGE

---

[3] Additionally, the guideline range was based on the statutorily authorized maximum sentences instead of the applicable guideline range of life, which applies regardless of criminal history category at an offense level of 43. (Doc. 67 at 31.) Moreover, even if Defendant had successfully attacked the age enhancement that was actually applied to his case - U.S.S.G. § 2G2.1(b)(1)(B) – it would not have affected the guideline calculations because his actual calculated offense level was 46; however, offense levels under the guidelines are capped at 43. Consequently, a review of the guideline calculations in this case reveals that removing this enhancement would not have impacted the calculation of Defendant's guideline range.